**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Catherine Waller, on behalf of her minor son D.B., and Abena Andoh, on behalf of her minor son D.H., | ) ) ) ) | No. 14 CV 00223 |
| Plaintiffs, | ) ) | Judge St. Eve |
| vs. | ) ) ) | Magistrate Judge Brown |
| City of Chicago, Chicago Police Officers J.E. Morlock (Star #15358), Kenneth Flaherty (Star #13584), Marco Prano (Star #9477) and Unknown Chicago Police Officers | ) ) ) ) ) ) | Jury Demanded |
| Defendants. | ) | |

**DEFENDANTS' JOINT
MOTION FOR ENTRY OF PROTECTIVE ORDER**

Defendants City of Chicago, by its attorney, Stephen R. Patton, Corporation Counsel of the City of Chicago, and Officers Jonathan Morlock and Kenneth Flaherty, by and through one of their attorneys, Julian M. Johnson, Assistant Corporation Counsel of the City of Chicago (collectively "Defendants"), respectfully move this Honorable Court, pursuant to FED. R. CIV. P. 26(c), for entry of a protective order designating as "confidential" video footage of Chicago Police squad car Beat 632 from December 22, 2013.

In support thereof, Defendants state as follows:

**BACKGROUND**

Plaintiffs, Catherine Waller, Abena Andoh, and Adren Wilbourn on behalf of their minor children, D.B., D.H., and J.G. have filed this Civil Rights action against the City of Chicago and three Chicago Police officers alleging federal claims of Excessive Force, Failure to Intervene,

1

Deprivation of Substantive Due Process, Failure to Provide Medical Care, and Conspiracy to Commit Constitutional Violations. Plaintiffs are also alleging state law claims for Assault and Battery, Respondeat Superior, and Indemnification. Plaintiffs allege that on December 22, 2013 Plaintiffs were in a motor vehicle with several other minors when the vehicle was stopped by Defendants Officers Morlock and Flaherty near 95th and LaSalle Street, Chicago, IL. Moments later, two of the passengers attempted to flee the scene. Defendant Prano arrived on the scene, in Chicago Police squad car Beat 632 as an assisting officer. As Officer Prano approached the vehicle, the vehicle began moving in reverse and at some point gunshots were heard. The Complaint alleges that Officer Prano was the one who discharged his weapon and that D.B. and D.H, who were occupants in the vehicle, were struck with bullets. Plaintiffs are seeking damages for those alleged injuries.

      Officer Prano squad car, Beat 632, was equipped with a dashboard camera. Parts of the incident between the officers and the Plaintiffs were captured by said camera. The video footage that is the subject of this motion is that footage. While Defendants do not quite know under which circumstances or from what source Plaintiffs have come in possession of said footage, Defendants, on information and belief, have reason to think that Plaintiffs came into possession of the footage prior to the discovery process in this lawsuit. Defendants are requesting a protective order from this Court under Federal Rule of Civil Procedure 26(c)(1) that the in-car camera video footage of Chicago Police Beat 632 from the December 22, 2013 incident not be released to third parties, the public, or the media.

## 37.2 CONFERENCE COMPLIANCE

      Attorney for the City did apprise Plaintiffs' counsel Timothy Fiscella of Defendants' intent to file this motion during a telephonic conference on June 23, 2014. When Counsel for the

City inquired whether this motion could be filed as "unopposed," Plaintiffs' counsel stated that Plaintiffs object to this motion without further explanation.

## ARGUMENT

I. **GOOD CAUSE EXISTS TO DEEM THE VIDEO FOOTAGE CONFIDENTIAL.**

   A. **Not all materials produced in discovery may be freely disseminated to the public and, as such, there is good cause to deem the video footage confidential.**

Rule 26(c) of the Federal Rules of Civil Procedure provides that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . specifying terms, including time and place, for the disclosure or discovery." Fed. R. Civ. Pro. 26(c). While court proceedings generally are open to public scrutiny, not all materials produced in discovery but unfiled in court proceedings may be freely available or disseminated to the public. Courts have consistently provided confidential protection for the kind of unfiled, sensitive documents at issue here. For instance, in Seattle Times Co. v. Rhinehart, 467 U.S. 20, 33 (1984), the Supreme Court held that the public's right of access is limited to traditionally publicly available sources of information, and "restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." The Court recognized that Fed. R. Civ. Pro. 26(c) allows for protection from annoyance and embarrassment, and while Rule 26(c) does not contain a specific reference to privacy, privacy is "implicit in the broad purpose and language of the Rule." Id. at 35, n.21. Police in-car videos, such as the one at issue here, which are disclosed through discovery, should not be disseminated to the public and the media during the pretrial discovery process. The videotapes are not a part of the court records. Public records do not include information

exchanged between the parties during discovery. There is no presumption of public access to the videotapes at this point in the litigation.

**B. Dissemination of the video would impede Defendants' right to a fair trial.**

The release of the video of the incident would severely harm the Defendants' right to a fair trial. "Television indubitably has a much greater potential impact on jurors than print media." In re NBC Universal, Inc., 426 F.Supp.2d 49, 58 (E.D.N.Y. 2006). "Voir dire would be an insufficient cure if a large segment of citizens in this district are exposed to the prejudicial information; exclusion of a considerable portion of the population would skew the panel, making it more difficult to find a cross-section of the community. Jurors' assurances that they have not been influenced by media reports are not necessarily dispositive." Id. (emphasis added). And, as this Court recognized, "[v]ideotapes are subject to a higher degree of potential abuse than transcripts. They can be cut and spliced and used as sound-bites on the evening news…" Hobley, 225 F.R.D. at 226 (quoting Felling v. Knight, IP 01-0571-C-T/K, 2001 WL 1782360, *3 (N.D. Ind. Dec. 21, 2001); see also Jones v. Clinton, 12 F.Supp.2d 931, 934 (E.D. Ark. 1998) (detailing extensively potential problems in releasing video to media). If Plaintiffs are allowed to disseminate the video of the incident to the media, the video most likely will be widely publicized by the media outlets. The concern is that these media entities often cut and splice videos before airing them. Such a selective showing of the video could taint potential jurors, impede a fair jury selection, and affect Defendants' right to a fair trial.

Even if the video were to be aired by the media as is, without splicing, this would still be prejudicial to Defendants because the video is incomplete. First, the police vehicle containing the video camera is parked on an angle while it is recording the incident. Because of this limited view, it is impossible to see the actions of others not in view of the camera. The video

4

recording alone gives an incomplete narrative of the second-by-second actions of the persons at the scene. Additionally, the video does not show what is being done or said inside of the vehicle the Plaintiffs were in. Second, the video contains no sound. This proves very problematic as potential juror pool members cannot hear any verbal commands, comments from the officers, or responses from the Plaintiffs. This incomplete picture is highly prejudicial as there is significant danger that the jury pool could form conclusions.

**C. The video should not be released to the public and the media out of concern for the personal safety, privacy, and security of the defendant officers as well as the other third party minors shown in the video.**

To ensure the safety, security, and privacy of the involved officers, Plaintiffs, and other individuals featured on this video footage which includes other minors, the video should barred from dissemination to the public and/or the media. These other minors were occupants in the same vehicle as Plaintiffs. However, these minors are not parties to this lawsuit and it must be inferred that they would want their privacy protected. Concern for their privacy and personal safety is paramount.

**D. Plaintiffs will suffer no harm or prejudice if this Court were to grant the request for the protective order.**

Plaintiffs would not be prejudiced in any way by the entry of a protective order. In fact, a protective order would likely minimize discovery disputes, as the parties will more readily disclose sensitive documents knowing they would only be used for the purposes of advancing the litigation of this matter. The ABA Model Rules of Professional Conduct, incorporated into this Court's local rules in Local Rule 83.50, specifically limit the statements which may be made by counsel in a pending litigation matter, stating "A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the

5

lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter." American Bar Association Model Rule 3.6(a). Denying public dissemination of this video would prevent attempts by Plaintiffs to utilize the media to influence jurors' view of the Chicago Police Department with inflammatory allegations and an entirely incomplete picture of the incident at hand. Furthermore, prohibiting the release of the video would not prejudice the Plaintiffs at all; rather, it would merely require Plaintiffs' counsel to try their case on the facts without using the media to gain favorable public sentiment within the venire. In addition, restricting public access to the video until the close of the proceedings strikes the proper balance of any perceived need for the public access to information with the need to fair trial. Even if this Court should determine that the video should eventually be released, Defendants at this time seek to avoid the release of the video prior to the conclusion of the proceedings to avoid any prejudice on the jury pool. Courts have repeatedly found such a balance to be proper. See U.S. v. Weed, 184 F.Supp.2d 1166, 1176-1177 (N.D. Ok. 2002) (prohibiting release of videotape prior to trial to preserve right to fair trial and finding "the government's proposal that the tape be sealed until the jury in this case has been selected and sworn is narrowly tailored to protect its right to a fair trial").

**WHEREFORE**, Defendants City of Chicago and Officers Morlock and Flaherty respectfully request that this Honorable Court grant the Defendants' motion for entry of protective order designating the police in-car video depicting the December 2013 incident as "confidential" and barring its dissemination.

**Dated: July 31, 2014**

Respectfully Submitted,

STEPHEN R. PATTON
CORPORATION COUNSEL

By:  */s/ Carla M. Kupe-Arion*                                              */s/ Julian M. Johnson*
      CARLA M. KUPE-ARION                                         JULIAN M. JOHNSON
      Assistant Corporation Counsel                                    Assistant Corporation Counsel
      *Counsel for Defendant City of Chicago*               *Counsel for Defendants Morlok and Flaherty*

7